UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

BRYAN HOUSER, ET AL.                                              PLAINTIFFS

v.                                                      No. 5:22-cv-108-BJB

KOHL'S INC., ET AL.                                              DEFENDANTS

MEMORANDUM OPINION & ORDER

Bryan Houser fell and suffered an injury while picking up packages for UPS from a Kohl's department store in Paducah. UPS contracts with Kohl's to transport merchandise to and from the retailer's stores. Houser received a workers' compensation payment under UPS's insurance policy.

But he has also sued Kohl's, alleging that it negligently maintained the loading dock where he fell. As explained by the Kohl's motion for summary judgment (DN 5-1), however, UPS is a subcontractor performing work that is a "regular or recurrent part" of the retailer's business. So Houser's claim is barred by the Kentucky Workers' Compensation Act, KRS § 342.690, and the Court will grant judgment in favor of Kohl's.

## I.      Houser's Injury and Claim(s)

Bryan Houser works as a truck driver for UPS. Complaint (DN 1-1 at 1); Motion for Summary Judgment at 10. On a rainy day in June 2021, Houser picked up packages from the loading dock of the Kohl's retail store on Hinkleville Road in Paducah. Response to MSJ (DN 6) at 1. When he struggled to open the back door of the UPS truck, Justin Rudesill (the Kohl's store manager) lent a hand. *Id.* With that help, Houser finally opened the door—only to stumble, slip on pooled water, fall, and hurt his shoulder. *Id.* at 2.

Houser asserts that the safety of this particular loading dock has been a persistent issue. According to Houser's summary-judgment response, "water … frequently seep[s] underneath the doors" of the dock when it rains, causing "water to puddle[,] creating very slick concrete because there is no way for the water to drain." *Id.* A Kohl's employee, Craig Logsdon, apparently told Houser "that the safety of the dock had been 'written up' due to the leaking overhead doors" and that "the reason the problem had not been addressed is due to [a] conflict of responsibility between the property management and Kohl's." *Id.* (citing Houser's interrogatory response quoting Logsdon).

Houser's shoulder injuries required surgery. *Id.* He continues to receive medical treatment and has not resumed driving for UPS (though he remains an employee). *Id.* He has, however, collected workers' compensation benefits from Liberty Mutual through UPS's state-mandated insurance policy. *Id.*; Motion for Summary Judgment at 10.

UPS also maintains a Master Services Agreement with Kohl's to "perform package delivery services," such as the pick-up Houser was completing when he fell. Motion for Summary Judgment at 2, 10. The agreement designates UPS as an "independent contractor" and requires it to maintain workers' compensation insurance designating Kohl's as an "additional insured." *Id.* at 10.

Houser initially sued Kohl's in McCracken County Circuit Court. Complaint at 1. His state-court complaint alleged that Kohl's was negligent because it knew that water around the loading dock would cause "dangerous and unsafe condition[s]" of the sort that caused his injury yet failed to mitigate that risk. *Id.* at 2. Houser also sued Liberty Mutual, which provides workers' compensation coverage to UPS, for coverage of his claimed medical expenses. *Id.* at 2–3. The state court dismissed Liberty Mutual from this case before Kohl's removed it to federal court. *See* Notice of Removal (DN 1); State Court Filings (DN 1-1) at 13. Kohl's then filed this motion for summary judgment.

## II.     The Kentucky Workers' Compensation Act Bars Houser's Tort Claim

The KWCA requires all employers to maintain workers' compensation insurance that will pay an employee for a workplace injury regardless of fault. KRS §§ 342.340, 342.610(1); *Phil Hollenbach Co. v. Hollenbach*, 204 S.W. 152, 156 (Ky. 1918). In return, the KWCA makes workers' compensation an exclusive source of recovery for injured employees. Section 342.690, titled "Exclusiveness of liability," begins by specifying that "[i]f an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee[.]"

Critically for this case, the exclusivity provided by a workers' compensation policy can extend "up the ladder" from a worker's immediate employer to reach the contractor that hired that employer. The statute's next sentence defines "employer" to include "contractor" in this context. KRS § 342.690(1).[1] And the Act goes on to

---

[1] KRS § 342.690(1) provides, in part, that:

> If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise

define contractor as "a person who contracts with another," known as the "subcontractor," to "have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person." § 342.610(2)(b).    The contractor is normally responsible for covering its subcontractor's employees.  § 342.610(2).  But the contractor (here, Kohl's) is off the hook if the subcontractor (UPS) "has secured the payment of compensation as provided for in this chapter."  *Id.*[2]  Both parties agree that Houser received a workers' compensation payment from UPS's insurer; the question is whether that payment precludes any liability of Kohl's based on its subcontractor's coverage.

To determine if work performed for a contractor is "a regular or recurrent part" of the contractor's "trade, business, occupation, or profession," KRS § 342.610(2)(b) (defining contractor), courts ask three questions, *see, e.g., General Elec. Co. v. Cain*, 236 S.W.3d 579, 585 (Ky. 2007).  First, was the subcontractor hired to perform the work in question?  *Black v. Dixie Consumer Products LLC*, 835 F.3d 579, 585 (6th Cir. 2016).  Second, was the work a "customary, usual or normal" part of the contractor's business or "work that [it] repeats with some degree of regularity?"  *Id.*  Third, was the subcontractor's work something "that [the contractor] or similar businesses would normally perform or be expected to perform with employees"?  *Id.*

---

entitled to recover damages from such employer at law or in admiralty on account of such injury or death.  For purposes of this section, the term "employer" shall include a "contractor" covered by subsection (2) of KRS 342.610, whether or not the subcontractor has in fact, secured the payment of compensation.

[2] KRS § 342.610(2) states that:

A contractor who subcontracts all or any part of a contract and his or her carrier shall be liable for the payment of compensation to the employees of the subcontractor unless the subcontractor primarily liable for the payment of such compensation has secured the payment of compensation as provided for in this chapter.  Any contractor or his or her carrier who shall become liable for such compensation may recover the amount of such compensation paid and necessary expenses from the subcontractor primarily liable therefor.  A person who contracts with another:

(a) To have work performed consisting of the removal, excavation, or drilling of soil, rock, or mineral, or the cutting or removal of timber from land; or

(b) To have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person

shall for the purposes of this section be deemed a contractor, and such other person a subcontractor….

The first question is uncontested: Houser does not dispute that UPS was working for Kohl's at the time of his injury. *See* Response to MSJ at 6. But the parties disagree about the second and third issues. *Compare* Motion for Summary Judgment at 11–12 *with* Response to MSJ at 2.

The record indicates that transporting merchandise is a normal part of the business of Kohl's: one that it would be expected to perform with employees absent the UPS contract.   An exhibit submitted by Kohl's shows that the company hires distribution employees that "hel[p] move products around the country to our customers, whether to their doorsteps or our stores," which is evidence of the regular role of merchandise distribution for the company. DN 5-2. Kohl's also offers shipping to online customers. DN 5-4. And a Kohl's employee helped Houser with the loading (or unloading—the papers aren't crystal clear which) that led to his injury. Response to MSJ at 1 (discussing Rudesill's assistance).

Houser, in contrast, hasn't pointed to any evidence in the record demonstrating that the transportation of merchandise is *not* a normal part of the retailer's business operations.   Or any evidence that Kohl's would not be expected to move its goods around absent its contract with UPS or some other subcontractor. So on this essential element of the up-the-ladder defense, the record uniformly supports the Kohl's position.

Several state and federal decisions show that this particular case is not an outlier. "Although relatively few cases have interpreted the immunity provision of the KWCA," Kentucky and federal courts alike have "consistently and uniformly held that the delivery of parts or goods from one company site to another is a regular and recurrent part of a company's business." *Giles v. Ford Motor Co.*, 126 Fed. App'x 293, 295 (6th Cir. 2005).   The Kentucky Court of Appeals, for instance, has held that "the transportation of … merchandise from the distribution center to the stores was a regular or recurrent part of Dollar General's business." *Wright v. Dolgencorp, Inc.*, 161 S.W.3d 341, 344 (Ky. Ct. App. 2004).   Similarly, it has held that the transportation of mined product is a regular part of the mining business. *Thornton v. Carmeuse Lime Sales Corp.*, 346 S.W.3d 297, 299 (Ky. Ct. App. 2010) (lime); *Tom Ballard Co. v. Blevins*, 614 S.W.2d 247, 249 (Ky. Ct. App. 1980) (coal).

And federal courts have routinely applied the KWCA to protect companies that hire subcontractors for shipping and delivery. "Transporting merchandise from a central storage facility to retail stores," a decision of this court has recognized, "is [an] essential element of operating a nationwide retail chain consisting of many stores." *Smothers v. Tractor Supply Co.*, 104 F. Supp. 2d 715, 718 (W.D. Ky. 2000). So too for Wal-Mart when it hired a contractor to deliver merchandise from a distribution center to individual stores. *Settles v. Wal-Mart Stores, Inc.*, No. 14-cv-64, 2015 WL 2152907, at *5 (E.D. Ky. May 7, 2015). And so too for Ford when it hired contractors

to ship its cars and parts. *Giles*, 126 Fed. App'x at 295–96; *Brock v. Ford Motor Co.*, No. 3:11-cv-716, 2013 WL 5934146, at \*3–4 (W.D. Ky. Nov. 5, 2013); *Sharp v. Ford Motor Co.*, 66 F. Supp. 2d 867, 869 (W.D. Ky. 1998). And in a context similar to this, the Sixth Circuit recently applied the KWCA's exclusivity provision to bar a suit by a truck driver injured while unloading a truck at the industrial facility of a company that hired his employer. *Black*, 835 F.3d at 586 (citing *Thornton*, 346 S.W.3d at 297–98). These precedents and the unrebutted evidence Kohl's supplied regarding its handling of merchandise establish, as a matter of law, that the task UPS was performing through Houser is a regular or recurrent part of Kohl's business. Like Dollar General, Tractor Supply, Wal-Mart and other retailers, Kohl's relies on the regular movement of merchandise between locations.

Houser's counterarguments are unavailing. He asserts that "[t]here is no evidence that Kohl's transports any parcels themselves," and that "Kohl's is not equipped to perform this duty." Response to MSJ at 4–5. That is partly wrong and partly irrelevant. Although the record is limited, the only evidence the parties cite in connection with this Rule 56 motion indicates that Kohl's actually hires some distribution employees and handles at least some packages itself. *See* DN 5-2, 5-4. Houser merely asserts that the primary Kohl's "retail" business is "completely different" from that of UPS, Response to MSJ at 6, never grappling with the evidence to the contrary. And Houser hasn't requested more time for discovery or noted what additional discoverable information might support his position that Kohl's hasn't satisfied the up-the-ladder standard under Kentucky law.

Finally, Houser's contention that Kohl's isn't equipped to deliver packages is beside the point even if it were true. Under Kentucky law, a "[a] contractor that never performs a particular job with its own employees can still come within KRS 342.610(2)(b)." *Doctors' Assocs., Inc. v. Uninsured Emps.' Fund*, 364 S.W.3d 88, 92 (Ky. 2011). "As long as the company contracts away a job it is expected to perform[,] even if it never actually performs the job[,] the company can be considered a 'contractor' that reassigned 'regular or recurrent' work." *Boyd v. Doe*, No. 13-cv-136, 2014 WL 5307951, at \*2 (E.D. Ky. Oct. 15, 2014). And here, as noted earlier, both the record and a long line of caselaw show that the transport of merchandise is a function that Kohl's is "expected to perform" in the ordinary course of its retail business.

\* \* \*

To recap, Bryan Houser received workers' compensation benefits from his employer, UPS, after he was injured on the job. Kohl's contracted with UPS to help it handle and ship packages—a regular or recurrent part of its business. *See Black*, 835 F.3d at 585. And Kohl's employees would be "expected to perform" this work as a "'normal' part of [the company's] business" absent the aid of a subcontractor. *See id.* So according to the KWCA, UPS's workers' compensation benefits displace any

claim Houser might have against its contractor Kohl's.  And because the KWCA applies, the Court needn't consider the additional argument from Kohl's that public policy would prevent liability even if the KWCA exclusivity provision did not.  *See* Motion for Summary Judgment at 13–14.

## Conclusion

The Court grants the Defendant's motion for summary judgment.

Benjamin Beaton, District Judge
United States District Court

January 26, 2023

6